BIBBER–WHITE CO. v. WHITE RIVER VAL. ELECTRIC R. CO. et al.
(JOSE PARKER & CO., Intervening Creditors).

(Circuit Court of Appeals, Second Circuit. April 22, 1902.)

No. 139.

1. APPEAL—FINAL DECISION—ORDER FIXING PRIORITY OF RECEIVER'S CERTIFICATES.

An order of a circuit court authorizing a railroad receiver to issue certificates, and providing that they shall be prior in lien to a mortgage indebtedness or to certificates previously issued, is a final decision in such sense as to be appealable.

2. RAILROAD RECEIVERS—AUTHORIZING COMPLETION OF ROAD—POSTPONEMENT OF EXISTING LIENS.

It is an unwarranted exercise of power by a court of equity to authorize its receiver to issue certificates for the purpose of completing a railroad, and to make the same a first lien on the road without giving the bondholders an opportunity to be heard, where the property is worth no more than the amount of the outstanding mortgage bonds, so that such holders are the equitable owners.

**3. SAME.**
>    The power to postpone existing liens to liens created by the court for the purpose of completing an unfinished railroad should not be exercised unless it can be done without ultimate loss to existing lienholders. In any case, it should be exercised with great caution; and where only one-third of a railroad was built at the time of the appointment of a receiver, and its value does not exceed the amount of the liens against it, the court is not warranted in authorizing the receiver to complete the road, and to issue certificates in payment, to be a first lien, over the objections of the lienholders.

Appeal from the Circuit Court of the United States for the District of Vermont.

See 110 Fed. 472, 473, 111 Fed. 36, 1004.

W. B. C. Stickney and Arthur H. Wellman, for appellants.

George D. Mumford, for appellees.

Before WALLACE and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge.   Error is assigned of an order of the circuit court of the United States for the district of Vermont entered August 7, 1900, authorizing the receiver of the White River Valley Electric Railroad Company to create a new issue of receiver's certificates to be used in the completion of the railroad of that company, such certificates to be a prior lien over certain certificates previously issued by the receiver pursuant to authority from the court.   The facts which led to the making of the order were these:   A bill of complaint was filed in February, 1900, by one of the unsecured creditors of the railroad company, asking, among other things, for the appointment of a receiver, with power to operate, repair, and complete the unfinished railroad of the defendant.   The bill alleged the insolvency of the defendant; that its railroad was partially completed, and being operated over a portion of its length; that there were outstanding $120,000 bonds of the defendant, of an authorized issue of $250,000, secured by a mortgage deed covering all its property; that the bonds were held by various persons as collateral security for loans to the defendant amounting to some $60,000; that $88,000 of these bonds were held by Jose Parker & Co., as collateral security for $44,000 of notes of the defendant; that the towns through which the said railroad was to run had subscribed subsidies amounting to $55,000, conditioned upon the completion of the railroad by December 30th next ensuing; that the defendant had unsecured indebtedness amounting to $125,000; that it had become impossible for the defendant to borrow money to complete its obligations or continue the work, and some attachments had been made and others threatened; that if its outstanding bonds should be defaulted, and the property should be sold under the mortgage, it would bring a nominal sum only; and that if the outstanding bonds could be recovered, and the road completed so as to save the town subsidies, the property could be saved, and the creditors of the defendant be paid.   The defendant answered, admitting the allegations in the bill of complaint, and submitting to the judgment of the court in respect thereto.   Thereupon, and upon the 20th day of February, 1900, the court appointed a receiver, with power to maintain and operate the railroad, and authority to complete and equip the same;

and for that purpose, and for the purpose of recovering the outstanding mortgage bonds, to issue receiver's certificates in the sum of $170,000, $70,000 of which were to be applied for the recovery of said bonds, and the balance for the completion of said railroad, said certificates to be a first lien upon all the property of the defendant of every kind. The present appellants, Jose Parker & Co., bankers, and holders of some of the outstanding mortgage bonds, intervened, and became parties to the action. The receiver issued some $60,000 of certificates, and exchanged them with holders of first mortgage bonds of about that amount, including Jose Parker & Co. He then endeavored to make contracts for the completion and equipment of the railroad, but found that no responsible contractor was willing to undertake the work for the certificates in the form and amount authorized. Thereupon the receiver moved the court for a modification of the previous order so as to permit him "to make reasonable and necessary contracts for the completion and equipment of said railroad, and issue receiver's certificates for the same, subject to the order of the court." Upon that application Jose Parker & Co. appeared and consented to such a modification of the order. The receiver represented, in substance, that unless the court authorized new certificates, which would be prior in lien to those already issued, he would not be able to secure the completion of the road. Jose Parker & Co., while consenting to the scope of the application of the receiver, objected to the creation of new certificates which would have priority over those already issued. Upon their representation that they could secure a contractor who would complete the road and receive payment in certificates without priority over the issue previously authorized, the disposition of the motion was suspended from July 20th to August 7th to give them an opportunity to do so. At the latter date, Jose Parker & Co., having failed to accomplish what they had attempted, did not appear in court, and the court made the order the correctness of which is now challenged.

We have entertained some doubt whether the order is in such sense a final decision as to permit a review by this court, except on appeal from the final decree in the cause, but have concluded that it is, upon the authority of In re Farmers' Loan & Trust Co., 129 U. S. 206, 9 Sup. Ct. 265, 32 L. Ed. 656.

The question of the propriety of the action of the court in authorizing the receiver to complete the road, and authorizing this to be done by an issue of receiver's certificates in the amount of $170,000, which should be a prior lien to the mortgage bonds, is not presented by this appeal. To all this the appellants consented, and it is fairly to be assumed that in doing so they recognized this course to be expedient under the circumstances of the case. They not only accepted the certificates issued pursuant to the first order and surrendered the bonds, but they also consented to a modification of that order which might involve the creation of a larger issue of certificates. Their objections raise the single question whether the court was justified in postponing one class of certificate holders to another,—their liens to the new ones created.

We must assume from the facts in the record that, unless the court had made the order which is complained of, the completion of the

road in time to secure the town subsidies for the fund under administration would have been impracticable, if it would have been practicable to complete the road at all. There would seem to have been only two alternatives,—to abandon the attempt to complete the road, or to create a larger issue of certificates without priority, and endeavor to complete it with the proceeds. The appellants were apparently unwilling to accept the first alternative. Whether the second was feasible was a question on which they differed with the court. There is no evidence in the record which enables us to ascertain whether the court erred in its judgment upon this question. The application by the receiver for a modification of the original order was not based upon a formal petition or supported by any affidavits or documentary evidence, and no affidavits were filed in opposition by the creditors who appeared when the application was made. The hearing and decision seem to have proceeded wholly upon the oral statements of counsel to the court. In the absence of such evidence, we are unable to say that the court erred in deciding the question, or that the admissions of counsel upon the hearing were not sufficient to justify the court's conclusion. The propriety of the order, however, presents another question: Was the court warranted in taking any further action towards completing the railroad which would defeat the priority of the existing liens without the consent of the lienholders? It appears that when the bill was filed and when the receiver was appointed only about 6 miles of the proposed 18 miles of railroad had been built, $130,000 of the unissued mortgage bonds could not be negotiated, and the enterprise had reached a condition of complete financial collapse. The holders of the first mortgage bonds were the only parties having any substantial interest in the property, as it was of no value in excess of their liens to stockholders or unsecured creditors, and apparently not of sufficient value to satisfy their liens. It was a somewhat unusual exercise of the power of a court of chancery under the circumstances to appoint a receiver in a suit to which the trustee of the mortgage bonds was not a party without consulting with the trustee or the bondholders, and we think it was an unwarranted exercise of power to authorize the receiver to undertake the project of completing the road without giving the bondholders an opportunity to be heard. They were the ones of all others who were entitled to a controlling voice in deciding whether there should be an attempt to complete the road, or whether the property should be sold and the proceeds applied towards satisfying their liens. However, it was within the discretion of the court to appoint a receiver without hearing them, and no injustice seems to have resulted to them by the order made at that time authorizing the receiver to complete the road. They were not obliged to accept the certificates in lieu of their bonds, and when they accepted them they acquired a lien as valuable as they had before. But their consent to come in under the terms of that order was not a consent in advance to every further scheme which might be suggested, and when one was proposed which would necessarily impair their liens, and perhaps practically destroy them, they had a right to object, and, having objected, they were entitled to have their liens preserved in the order of their priority, according to the estab-

lished principles of equity. The appointment of a receiver vested in the court no absolute power over the property, and no general authority to displace vested contract liens. "The holder of a mortgage deed upon a railroad has the same right to demand and expect of the court respect for his vested rights and contracted priority as a holder of a mortgage on a farm or lot." Kneeland v. Trust Co., 136 U. S. 97, 10 Sup. Ct. 950, 34 L. Ed. 379. The appellants were, in effect, equitable mortgagees of the property in the custody of the court, and the priority of their lien was as sacred as though it had been created by the railroad company instead of the court.

The power of a court, which has appointed a receiver in an equity cause and taken possession of a railroad, to subordinate the existing liens upon the property to the expenses of the administration, including those of operating and maintaining it in proper repair, cannot be challenged. But the power to postpone existing liens to liens created by the court for the purpose of completing an unfinished railroad has rarely been exercised, and ought not to be exerted unless it can be done without ultimate loss to the existing lienholders. It is to be exercised with great caution, and, if possible, with the consent or acquiescence of all the parties in interest. Wallace v. Loomis, 97 U. S. 146, 24 L. Ed. 895; Kennedy v. Railroad Co., 5 Dill. 519, Fed. Cas. No. 7,707; Union Trust Co. v. Illinois Midland R. Co., 117 U. S. 434, 6 Sup. Ct. 809, 29 L. Ed. 963. In Jerome v. McCarter, 94 U. S. 734, 24 L. Ed. 136, the court intimated doubt of the propriety of the exercise of the power to the prejudice of the prior lienholders without their consent; but in Miltenberger v. Railroad Co., 106 U. S. 287, 1 Sup. Ct. 140, 27 L. Ed. 117, the court upheld receiver's certificates, with a prior lien to that of a pre-existing mortgage, created for the purpose of obtaining rolling stock, and for building 6 miles of road and a bridge, part of the main line of a road 92 miles long. The latter is the only reported case which has been called to our attention, in which the exercise of the power has been approved, where it was not invoked at the instance of the prior lienholders, or sanctioned subsequently by their acquiescence, or where their conduct did not create an estoppel. In that case, however, the security of the prior lienholders was augmented instead of impaired by the expenditure permitted. The value of the property was to be enhanced far beyond the cost of the new construction, and $95,000 of the total cost of $125,000 had been donated for the purpose to the receiver by a municipal corporation and another railroad corporation, and it was upon these considerations that the court below made the order which was under review. That decision affords no support to sustain the present order. Here was a road only one-third built. No one could be found willing to complete it upon the terms which had previously been proposed, and, in view of the whole situation as it was presented to the court, the outcome of an attempt to complete it was too uncertain to authorize it to be made without the consent of the appellants. The effect of the order was certain to render their security more precarious, if not to render it worthless, and the chances that the other creditors of the corporation could realize anything by carrying out the scheme were wholly conjectural. Probably in making the order the learned judge

of the court below supposed because the appellants did not appear in court at the time that they did not intend to object to it; but they had already objected to it, and we find nothing in the record to indicate that they intended to waive the objections which they had already made. Under the circumstances, we are of the opinion that the order was an erroneous exercise of judicial discretion.

As the appellants had consented to such a modification of the prior order as would involve the creation of new certificates sufficient in amount to complete the road, the order appealed from should not be vacated, but should be modified by striking out that part making the new certificates prior in lien to those previously issued.

So ordered, and the cause remitted, with instructions to modify the order accordingly.